733 So.2d 58 (1999)
STATE of Louisiana, Appellee,
v.
William Joel SALTER, Appellant.
No. 31,633-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
*60 Steven R. Thomas, Mansfield, Amy C. Ellender, Mer Rouge, Counsel for Appellant.
Richard Ieyoub, Attorney General, Don Burkett, District Attorney, Richard Z. Johnson, Jr., Anna Garcie, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, GASKINS and KOSTELKA, JJ.
GASKINS, J.
The defendant, William Joel Salter, was originally charged with three counts of attempted first degree murder. At trial, the defendant admitted to the shootings, but he claimed that he acted in self-defense. A jury convicted him of three counts of attempted manslaughter, in violation of La. R.S. 14:31 and 14:27. The trial court imposed concurrent sentences of 10 years at hard labor on each count. The defendant appealed. For the reasons set forth below, we affirm the defendant's convictions and sentences.

FACTS
On September 22, 1997, a series of confrontations between a group of young adults in Mansfield, Louisiana, culminated in the defendant shooting Solomon (Solan) Nussman, Eva McMellon, and Grady Lee Lewis.
Early in the day, Billy Hamilton had a hostile encounter with Scott Wisely, who was accompanied by Bill Campbell. Hamilton informed the defendant, Joel Salter, and several other friends of the episode. A group of these friends gathered to go "riding" in a pick-up truck that evening. The driver of the truck was Nanissa Terrell. Also riding in the cab of the truck were Chastity Jackson and Thomas Farris. In the bed of the truck were the defendant, Hamilton, and Matthew (Mack) Price. Also present in the back of the *61 truck were Clarence "Worm" Terrell, and Curtis "Bull" Terrell, Nanissa's brothers.
The group went to the residence of Kevin Robbins and Eva McMellon; they believed that Wisely also resided there. They drove past the house several times. On one pass by the house, there was a verbal exchange between the truck occupants and persons gathered outside of the house. The persons at the house included Robbins, Ms. McMellon, Wisely, Campbell, Breanna Endicott, Grady Lee Lewis and Solomon Nussman. At some point, the defendant drew a gun and fired two to three shots in the air. The truck then sped off.
Angered, Wisely and Campbell got in a gray Mustang and went in search of the truck occupants. Eventually, they found them at the Terrells' home in south Mansfield. A fight between Wisely and Hamilton quickly disintegrated into a "free-forall" brawl. Outnumbered, Wisely and Campbell lost the fight and left. As they departed, one of them threatened to kill the group at the Terrell house.
A second group consisting of Ms. McMellon, Ms. Endicott, Lewis, and Nussman also left the Robbins residence shortly after the confrontation with the truck occupants. Traveling in Lewis' white fourdoor Dodge, they first dropped off Ms. Endicott. They then began to go to the Terrells' residence. Maintaining that they had had no prior problems with them, the car occupants later testified that they wanted to confront the persons involved in the earlier incident to ascertain its cause.
En route to the Terrell residence, they encountered the departing Wisely and Campbell, who warned them to not go there. However, they proceeded. Lewis was driving, Nussman occupied the front passenger seat, and Ms. McMellon was seated directly behind the driver. No one in the car was armed with any weapon. According to their testimony, when they came over a hill close to the Terrell house, they saw a crowd gathered in the street and Lewis swerved to avoid hitting them.
The persons gathered in the street near the Terrells' house testified that they heard a car accelerate and then saw a white car coming at them. The group scattered. As the car left the road and went into the front yard, Curtis Terrell was struck; he hit the car hood and rolled off. Lewis placed the car in park, and the engine died.
Clarence Terrell ran to the driver's window of the car and began to beat Lewis through the partially open window. Ms. Terrell ran to where her brother Curtis lay on the ground. As Nussman began to try to open his car door, the defendant, who was on the passenger side of the car, began shooting into the vehicle.
Nussman was struck four times, first in the jaw, then the neck, the stomach, and the lower side. The driver, Lewis, was shot next. He was hit in the mouth, the back, and the leg. The back seat passenger, Ms. McMellon, was then shot in the arm.
When the defendant finished shooting, he ran from the scene. At trial, he claimed that he threw the gun away at some point during his flight. It was never recovered. Within two hours of the shooting, the defendant went to the police station at his sister's urging. He gave a voluntary statement in which he admitted the shootings at the Terrell residence but claimed that he "blanked out" and began firing. In the same statement, he lied about his actions at the Robbins house, claiming that not only had he not fired any shots there but that he did not even have the gun with him at that time. He was arrested that night for the shooting of Nussman, Lewis and Ms. McMellon.
Immediately after the shooting, Ms. Jackson drove the three gunshot victims to DeSoto General Hospital. Nussman and Lewis were airlifted to LSUMC in Shreveport. Nussman underwent surgery in which his gall bladder and a portion of one kidney were removed and his liver was *62 repaired. Lewis still has a bullet in his back as a result of the attack.
Curtis Terrell was also taken to the hospital, where he was treated for a fractured jaw and released within a few hours. He and his friends asserted at trial that they believed that Lewis deliberately tried to run them over. However, no charges were ever brought against Lewis for that incident.
The defendant was charged with three counts of attempted first degree murder. At trial, he contended that he believed that a drive-by shooting was in progress and that his life was in danger from the occupants of the car; he maintained that he shot them in self-defense. The jury rejected this defense but returned guilty verdicts on the lesser charge of attempted manslaughter. The trial court ordered a presentence investigation (PSI) report. After reviewing the report, the trial court sentenced the defendant to 10 years at hard labor on each count, the terms to be served concurrently. A timely motion to reconsider sentence was denied.
The defendant appeals. He assigns four errors.

SUFFICIENCY OF EVIDENCE
The defendant contends that, in light of his claim of self-defense, the evidence presented at trial was insufficient to convict him of attempted manslaughter. Such a claim is properly raised by a motion for a post verdict judgment of acquittal. La.C.Cr.P. art. 821. The record does not indicate that such a motion was filed. However, this court will review a sufficiency of the evidence issue even when it is raised solely by an assignment of error. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The relevant inquiry when reviewing a conviction for the sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, initially enunciated in Jackson, and now legislatively embodied in La.C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Cotton, 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ford, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847. The appellate court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Cotton, supra; State v. Rhodes, 29,207 (La.App.2d Cir.1/22/97), 688 So.2d 628, writ denied, 97-0753 (La.9/26/97), 701 So.2d 980.
The defendant was convicted of attempted manslaughter. La. R.S. 14:31 defines manslaughter, in pertinent part, as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed....
La. R.S. 14:27 provides, in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, *63 he would have actually accomplished his purpose.
A defendant who raises self-defense as a justification for his or her act does not have the burden of proof on that issue. Because of its burden to prove a criminal act, the state must show beyond a reasonable doubt that the crime was not committed in self-defense. State v. Harvey, 26,613 (La.App.2d Cir.1/25/95), 649 So.2d 783, writs denied, 95-0430 (La.6/30/95), 657 So.2d 1026 and 95-0625 (La.6/30/95), 657 So.2d 1028; State v. Walker, 29,877 (La.App.2d Cir.10/29/97), 702 So.2d 18.
In order for the defendant's actions to be justified, the force used must be reasonable under the circumstances and apparently necessary to prevent an imminent assault. State v. Golson, 27,083 (La. App.2d Cir.6/21/95), 658 So.2d 225, writ denied, 97-0165 (La.10/10/97), 703 So.2d 600; La. R.S. 14:19.
The evidence presented at trial is sufficient to support the defendant's convictions. The defendant admitted to repeatedly shooting into the car, and this act shows a specific intent to kill or inflict great bodily harm. As the jurors found the defendant guilty of attempted manslaughter, they must have found the circumstances surrounding the shootings provided a sufficient provocation to reduce the defendant's culpability from attempted first or second degree murder to attempted manslaughter. The state proved the defendant committed acts which would make him guilty of attempted manslaughter.
The defendant claimed his actions were justifiable as he was acting in self-defense. However, we find that the state proved beyond a reasonable doubt that the defendant was not acting in self-defense when he shot into the car. Even if the jurors believed the defendant's own testimony, they could have reasonably found that the force used by the defendant was unreasonable under the circumstances and that it was not necessary to prevent an imminent assault. The defendant stated that when he fired the gun into the car, he was not worried about being hit by the car. He admitted that he did not see anyone in the car with a weapon. In fact, the defendant stated he did not know who was in the car or even how many people were in the car. Under these circumstances, the jury could have reasonably concluded that the defendant's actions were not justified as there was no showing that the defendant was in any danger.
Additionally, if the jurors accepted the testimony of either Nussman or Ms. McMellon concerning what happened when the defendant began shooting, they could have found that the defendant was not acting in self-defense. Both Nussman and Ms. McMellon indicated that the defendant pointed the gun directly at them.[1] From this, the jurors could have concluded that the defendant was able to see into the car and that he knew the passengers were unarmed. We find that the evidence presented at trial was sufficient to support the verdicts.
This assignment lacks merit.

OTHER CRIMES EVIDENCE
In this assignment, the defendant alleges the trial court erred in allowing the state to present evidence regarding the gunshots fired at Robbins' house, as the defendant claims this was inadmissible other crimes evidence. When the prosecutor mentioned the gunshots at Robbins' house in his opening statement, defense counsel objected and requested a mistrial. See La.C.Cr.P. art. 770(2). Defense counsel argued that the prosecution did not give sufficient notice of its intent to use this evidence, and, even if the notice were *64 sufficient, the evidence was still inadmissible as other crimes evidence. The trial court denied the motion for mistrial and allowed the evidence, finding that it was an integral part of a continuing event under La. C.E. art. 404(B)(1).
Though generally inadmissible, evidence of other crimes, wrongs or acts may be introduced when it "relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." La. C.E. art. 404(B)(1). Other crimes evidence is admissible when intertwined with the charged offense to such an extent that the state could not accurately present its case without reference to the evidence. State v. Haarala, 398 So.2d 1093 (La.1981); State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. In such cases, the purpose served by the admission of the evidence is not to depict the defendant as a bad person, but rather to complete the story of the crime on trial by proving the immediate context of happenings near in time and place. State v. Pratt, supra. The notice requirements of Prieur and its progeny are not applicable to evidence of offenses which constitute an integral part of the act or transaction that is the subject at bar. State v. Griffin, 618 So.2d 680 (La.App. 2d Cir.1993), writ denied, 625 So.2d 1063 (La.1993).
In the instant case, the evidence of the gunshots at Robbins' house had independent relevance other than portraying the defendant as a bad person. It constituted a vital component in the chain of events ultimately leading to the shooting of the occupants of the white car. As the evidence was needed to show this chain of events, its probative value outweighed its prejudicial effect. See La. C.E. art. 403.
We find that the other crimes evidence here constituted an integral part of the transaction that is the subject of the present proceeding. The gunshots at Robbins' house occurred about 30 minutes before the shootings of the three victims. Also, the victims specifically testified that they went to the Terrells' home as a direct result of the gunshots fired during the earlier incident. Since the evidence concerning the gunshots at Robbins' house formed an integral part of the acts at issue, it was admissible.
Even if the trial court erred in admitting this evidence, reversal is not warranted. The erroneous introduction of other crimes evidence is a trial error and subject to harmless error review. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. Although La.C.Cr.P. art. 770, which pertains to mistrials, is couched in mandatory terms, it is a rule for trial procedure and subject to harmless error review. State v. Ingram, 29,172 (La.App.2d Cir.1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505. Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict. State v. Harris, 97-0300 (La.4/14/98), 711 So.2d 266; State v. Wille, 559 So.2d 1321 (La. 1990). In the instant case, it is highly unlikely that the evidence concerning the gunshots at Robbins' house contributed to the verdict. The defendant admitted to shooting the victims, and his only defense was that his acts were justifiable. Even the defendant's own testimony did not show his actions to be justifiable under the circumstances.
This assignment is meritless.

EXCESSIVE SENTENCES
In two assignments of error, the defendant attacks his concurrent sentences of 10 years on each of the three counts of attempted manslaughter. Specifically, he alleges the trial judge erred in not adequately complying with La.C.Cr.P. art. 894.1 and in imposing excessive sentences.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show adequate consideration of the criteria *65 set forth in La.C.Cr.P. art. 894.1. State v. Smith, 433 So.2d 688 (La.1983). The trial court is not required to list every aggravating and mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith, supra. The articulation of the factual basis for the sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Remand is unnecessary when a sufficient factual basis for the sentence is shown. State v. Lanclos, 419 So.2d 475 (La.1982). The sentencing record should reflect that the trial judge considered not only the seriousness of the crime and the past criminal history of the defendant, but also the defendant's personal history (including age, mental status, dependants, family ties, employment record, and health) and the potential for rehabilitation. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
The second prong of the inquiry requires an examination of the circumstances of the case and the background of the defendant. A sentence violates La. Const. Art. 1, § 20 (1974) if it is considered grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Barnes, 28,835 (La. App.2d Cir.12/11/96), 685 So.2d 1148, writ denied, 97-0274 (La.10/10/97), 703 So.2d 602. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The court of appeal will not set aside a sentence as excessive absent a showing of manifest abuse of discretion. State v. Barnes, supra.
The trial judge adequately complied with La.C.Cr.P. art. 894.1. As aggravating factors, he considered that the defendant committed a violent act, he created a risk of death or great bodily harm to more than one person, he caused significant injury to the victims (who were shot at close range), and he escalated the conflict. As mitigating factors, the judge considered the victims' fault in bringing about the incident, the 23-year-old defendant's age, and the defendant's minimal criminal history. Also, while the trial judge did not believe there was an undue risk of the defendant committing another crime, he felt any lesser sentence would diminish the seriousness of the defendant's crimes.
As for the second prong of the test, the sentences imposed on the defendant were not grossly disproportionate to the seriousness of the offenses or a purposeless and needless infliction of pain and suffering. The defendant shot three people without justification, seriously injuring two. Considering the defendant's actions, the imposition of these mid-range concurrent sentences does not shock our sense of justice.
In the instant case, the trial judge adequately complied with La.C.Cr.P. art. 894.1, and the sentences imposed are not excessive. These assignments lack merit.

ERROR PATENT
At the time of sentencing, the trial judge shall inform the defendant of the prescriptive period for post-conviction relief. La. C.Cr.P. art. 930.8(C). The prescriptive period for post-conviction relief runs from the date the judgment of conviction and sentence becomes final. La.C.Cr.P. art. 930.8(A).
The trial judge incorrectly informed the defendant that he had three years from the date of sentencing to file an application for writs of review of the sentence. Accordingly, the trial court is directed to give the defendant written notice within 10 days of the rendition of this opinion that the prescriptive period for applying for post-conviction relief begins when the judgment of conviction and sentence becomes final, and proof of the defendant's receipt of the notice shall be filed in the record of the proceeding. State v. Ross, 26,272 (La.App.2d Cir.8/17/94), 641 So.2d 732.

*66 CONCLUSION
The defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] In fact, Nussman testified that the defendant put the gun to his jaw and pulled the trigger.