STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 09-119


STATE OF LOUISIANA

VERSUS

THERON J. CHAISSON


********** 

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR116180
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Billy Howard
Ezell, Judges.

AFFIRMED.

Michael Harson
District Attorney, Fifteenth Judicial District Court
P.O. Box 3306
Lafayette, LA 70502-3306
(337) 232-5170
Counsel for Plaintiff/Appellee:
State of Louisiana

**D. Warren Ashy**
**Attorney At Law**
**200 West Vermillion Street**
**Lafayette, LA 70501**
**(337) 237-0000**
**Counsel for Defendant/Appellant:**
**Theron J. Chaisson**

**EZELL, JUDGE.**

On June 25, 2008, Defendant, Theron Jerome Chaisson, was convicted by jury verdict of one count each of production or manufacture of a cocaine base, possession of cocaine, and possession of cocaine with intent to distribute, all in violation of La.R.S. 40:967. Following Defendant's conviction, the trial court ordered a pre-sentence investigation report.

Defendant appeared in court for sentencing on September 24, 2008. After considering the evidence presented, the trial court gave reasons for its decision and imposed the sentences for Defendant's convictions. For manufacturing cocaine base, the trial court ordered Defendant to serve ten years at hard labor without benefit of probation, parole, or suspension of sentence but with credit for time served. For simple possession of cocaine, Defendant received five years at hard labor with credit for time served. The trial court ordered Defendant to serve his penalties for manufacturing cocaine base and for simple possession of cocaine concurrently.

For Defendant's possession of cocaine with intent to distribute conviction, the trial court imposed eight years at hard labor, ordered Defendant to serve two years of the sentence without benefit of probation, parole, or suspension of sentence, and gave Defendant credit for time served. The trial court then ordered Defendant's eight-year sentence to run consecutively with his other two sentences. Defendant did not file a motion to reconsider sentence with the trial court.

Defendant now appeals his convictions and sentences.

## STATEMENT OF FACTS

At trial, Corporal Covey Menard, with the Lafayette City Police Department, was the State's first witness. Around 2:00 a.m. on April 8, 2006, Corporal Menard responded to a dispatch concerning shooting at the corner of Northeast Evangeline

1

Thruway and Jade Street where he found a deceased victim in a car. Another officer suggested to Corporal Menard that, because the shooting had occurred at another location, they should check the area to find where the victim had been shot.

Corporal Menard stated he then patrolled the area; as a result, he found a pair of shoes in the roadway in the 300 block of Darrell Street and noticed still-wet blood and bullet casings near the road at 313 Darrell Street. One of the doors to the house at 313 Darrell Street was open. Corporal Menard reported his findings and requested assistance. Once the additional officers arrived, Corporal Menard assisted in securing the crime scene. At the request of Sergeant Miller, Corporal Menard, his canine, and Detective Oren Haydel checked the residence for additional victims and suspects. The officers did not want to be ambushed while they were outside if there was a suspect inside.

Upon entering the house, Corporal Menard noticed the lights were on in the kitchen; Corporal Menard saw there was a scale and marijuana on the kitchen counter. Although Corporal Menard found no suspects in the house, he smelled marijuana while inside.

Detective Oren Haydel, with the Lafayette City Police Department, was the second witness to testify for the State. As part of his duties, Detective Haydel arrived at 313 Darrell Street around 2:00 a.m.; he went to assist Corporal Menard. Detective Haydel saw the bullet shells near the street and noticed the door to the house was either open or ajar. Detective Haydel assisted in performing a security sweep of the residence. While inside the residence, Detective Haydel noticed some marijuana on the kitchen counter and an open pistol case or box in the living room. Detective Haydel also recalled that the residence had a video surveillance system set up to monitor the carport area.

2

Detective Walter Allred, also with the Lafayette Police Department, was the prosecution's third witness. Detective Allred arrived at 313 Darrell Street on April 8, 2006, at approximately 3:15 a.m. When he arrived, he spoke to Officers Haydel and Menard, who described to him their observations of the inside of the house. When he arrived, there were two vehicles parked at the residence: a truck in the front yard and a Chevrolet Impala under the carport. Detective Allred determined ownership of the vehicles by checking the license plate numbers. Defendant owned the Impala, and Demetria Prejean owned the truck.

Detective Allred further reported that law enforcement canvassed the neighborhood to find witnesses to what had happened. Detective Allred did not enter the house until after Detective Mike Rose secured a search warrant for the premises. Pursuant to his search, Detective Allred noticed a surveillance camera under the carport monitoring the street, loose marijuana on the counter top of the kitchen island, an empty gun case in the living room, an empty gun case in the rear right bedroom, a jacket in the coat closet with crack cocaine residue, one unfired bullet for a nine-millimeter pistol from a drawer in the kitchen, and a substantial amount of crack cocaine in a sugar or cookie jar in the kitchen. In the rear bedroom, Detective Allred also found a monitor with a VCR recording the comings and goings at the residence's front door. Detective Allred did not find a gun in the residence that would fit in either empty case.

The fourth witness for the prosecution was Detective Kevern Stoute, with the Lafayette Parish Sheriff's Office. As part of the crime scene unit, Detective Stoute entered the residence at 313 Darrell Street. Detective Stoute photographed, videotaped, and collected the evidence in the house. Detective Stoute seized handgun cases for a .40 caliber handgun and a nine-millimeter pistol, but there were no guns

3

inside the residence. The empty shells found outside the home consisted of eleven casings for a .40 caliber handgun and nine for a nine-millimeter pistol. Detective Stoute sent the drug evidence to the Acadiana Crime Lab for testing. According to the Acadiana Crime Lab report, the substances seized included marijuana and 4.5 grams of cocaine. The bills found at 313 Darrell Street were addressed to Defendant.

Detective Stoute stated he recovered a scale and a grinder from the kitchen counter. The items appeared to bear drug residue. Detective Stoute has previously seen the type of grinder seized from 313 Darrell Street; it is found in drug-related cases where it is used to grind a hard substance, such as cocaine, back into a powdery substance. The scale and the grinder tested positive for cocaine and marijuana. Detective Stoute also collected a microwave oven as evidence.

Inside a shed on the property, Detective Stoute said he found a table set up as a measuring station. The table bore a kitchen plate, scissors, a razor blade, a brown spoon with residue, another digital scale, test tubes, a mirror, and baking soda. Detective Stoute explained that baking soda can be used to cut cocaine and cocaine can be cut on a mirror with a razor blade.

Detective Kane Marceaux, with the narcotics division of the Lafayette City Police Department, was the next witness to testify. Detective Marceaux also participated in investigating 313 Darrell Street on April 8, 2006. As a result of his investigation, Detective Marceaux determined that Defendant and his girlfriend, Ms. Prejean, occupied the residence. Detective Marceaux entered the house pursuant to a search warrant.

Detective Marceaux recalled finding evidence of drug activity at 313 Darrell Street: a drug scale on the kitchen floor next to a counter, a digital scale on top of the table, a *High Times* magazine next to the digital scale, a razor blade to the left of the

scale, and residue on top of the table. Detective Marceaux explained that *High Times* magazine explains the different types of marijuana and how to grow it; additionally, it advertises herbs that are equivalent to marijuana without the THC. The size of the floor scale indicated to Detective Marceaux that someone was weighing out large amounts of narcotics, pounds or kilograms, and the smaller digital scale was for weighing amounts as small as ounces or grams.

Detective Marceaux recognized the cannister of cocaine seized from the kitchen table. Detective Marceaux confirmed the crime lab weighed it as being 4.5 grams. The amount was close to an eightball, 3.4 grams, which is a common amount of cocaine for sale. The digital scale bore cocaine residue, which, in Detective Marceaux's experience, meant that the scale had been used in a drug purchase because it is typical for either the dealer or the purchaser to weigh the cocaine to keep the transaction honest.

Detective Marceaux stated that the residue on the scale made the microwave suspect, so he opened the microwave door and swabbed the inside. The interior of the microwave tested positive for cocaine. Microwaves can be used to cook cocaine into crack cocaine; if it is not covered during the heating process, the cocaine will splatter like soup. In Detective Marceaux's experience, a microwave used to cook crack cocaine will "usually have a dry, caked-on residue on the inside of the door, the top of the microwave, and the back." His visual inspection of the microwave at 313 Darrell Street revealed such residue.

Detective Marceaux reported entering a shed outside the main house. Inside the shed, there was another scale, scissors on the floor, a razor blade, a plate with cocaine residue, and a lot of marijuana gleanings.

5

Amanda Hebert, a forensic chemist with the Acadiana Crime Lab, was the next witness for the prosecution. The trial court accepted Ms. Hebert as an expert in "forensic chemistry, particularly related to the identification of controlled dangerous substances." As part of her duties, Ms. Hebert examined some of the evidence in the case for the purpose of determining the presence of controlled dangerous substances. Ms. Hebert determined there was a plastic bag containing 4.5 grams of cocaine. Ms. Hebert further determined that the leafy green vegetable matter also submitted for examination was marijuana.

Ms. Hebert explained the difference between regular cocaine and crack cocaine; crack is the smokeable form of powdered cocaine. The powder has an iridescent quality, and crack cocaine usually appears as small rocks that are easily crumbled. Crack is made by dissolving cocaine in water and adding a heat source and some type of base, such as baking soda, milk of magnesia, or urine. The process breaks down the cocaine molecule and creates freebase, also called cocaine base and crack. Cocaine base is still cocaine, but it can be a more potent form of cocaine because the process rinses away the impurities in the powdered cocaine.

Ms. Hebert stated that cocaine base can be manufactured on a hot plate, with water boiling on a stove, or in a microwave oven. The microwave would be the quickest method. Ms. Hebert tested a microwave oven in relation to the instant case. The residue in the microwave was crack cocaine. Ms. Hebert opined that the microwave had been used to manufacture cocaine base.

Ms. Hebert said she also tested the residue on the digital scale; it tested positive for cocaine and marijuana. The green residue in the grinder was marijuana. Ms. Hebert also tested another digital scale, a plastic bag, a mirror, and a ceramic plate. Ms. Hebert did not run a chemical analysis on the box of baking soda; however, a

6

color test showed the powder inside was consistent with baking soda. The residue on the plate was cocaine. Ms. Hebert also examined a bag containing scissors, an empty glass bottle with a dropper, a large metal spoon, two razor blades, and one smaller plastic bag containing white residue. Ms. Hebert related that the tests performed on the smaller plastic bag showed the white residue to be cocaine.

Ms. Hebert tested what she found on the glass plate inside the microwave. On cross-examination, Ms. Hebert clarified that the residue on the plate had not been crack cocaine; it had been powder cocaine. Crack cocaine can be cooked in anything microwave safe; the plate was not microwave safe. Because it does not break down, the crack would stay in the microwave until it was cleaned. Ms. Hebert was not sure whether a thorough cleaning would remove all of the residue, but she thought it would be much like any other substance that splashed the interior of the microwave.

Corporal Shannon Brasseaux, with the Lafayette Police Department, testified following Ms. Hebert. On December 18, 2007, Corporal Brasseaux was working with the Action Unit assisting Metro-Narcotics. On that date, Corporal Brasseaux was called to participate in a take-down team for a cocaine purchase. Corporal Brasseaux was given a description of the suspect's vehicle and told it was located at the Popeye's located on the corner of South College and Pinhook. The take-down team located the vehicle and arrested the occupant. While patting down the suspect, Corporal Brasseaux felt a lump consistent with the one ounce of cocaine the suspect was supposed to be delivering. Corporal Brasseaux retrieved the item and gave it, along with marijuana also found, to the investigating officer. The suspect arrested was Defendant. Officer Beau Guidry and Officer Ryan Shanahan also participated in arresting Defendant and witnessed the seizure of the drugs.

7

Agent Jace Quebedeaux, with the Lafayette Metro-Narcotics Unit, also testified concerning Defendant's December 18, 2007 arrest. Earlier in the day another officer found narcotics in the possession of someone stopped for a traffic violation. That person, the informant, told Agent Quebedeaux about someone, referred to by nickname and cell phone number, who possessed a large amount of cocaine. Further investigation revealed the person to be Defendant. The informant cooperated by telephoning Defendant's number twice. The informant arranged to meet Defendant and purchase two or three ounces of cocaine for $650 each. Defendant arrived in the vehicle described in the telephone conversations at the prearranged time and place. Defendant was then arrested and evidence was seized: a bag containing twenty-eight grams of cocaine, a marijuana cigar, and three additional bags of cocaine altogether totaling eighty-six grams in weight.

Defendant testified on his own behalf. Defendant stated he earned money by doing construction and trash removal with his brother, cutting hair, and sometimes by performing mechanic work on cars. Defendant is in a relationship with Ms. Prejean; they were also together in April 2006. Defendant admitted that the marijuana and the cocaine in the cookie jar the police found at 313 Darrell Street belonged to him. Defendant denied cooking crack cocaine and specifically denied using the microwave to do so. Defendant also denied knowing how to make crack. Defendant stated the microwave did not belong to him; it was in the house when he moved to 313 Darrell Street. Defendant additionally denied having access to the shed on the property.

Defendant explained he had changed after April 2006 and had stopped selling drugs. However, Lester Williams kept approaching him about drug sales during December 2007, and Defendant eventually "made a bad mistake . . . a bad choice."

8

Demetria Prejean was the second and final witness for the defense. Ms. Prejean cohabited with Defendant, and they had three children together. They were living at 313 Darrell Street on April 8, 2006; by then, Ms. Prejean and Defendant had been in a relationship for six years, and they had been living at that address since February 2006. Ms. Prejean affirmed that the microwave oven had been in the residence when they moved there, that she had never known Defendant to cook crack cocaine, nor had she cooked crack cocaine, and that she had never known of anyone cooking crack cocaine in that microwave oven.

On cross-examination, Ms. Prejean said both she and Defendant had used the microwave after they moved to 313 Darrell Street. Although Ms. Prejean used the cookie cannister, she was unaware there was cocaine in the house. Ms. Prejean and Defendant rented the property and the buildings thereon from Clarence Granger. Ms. Prejean denied ever entering the shed on the property and stated she did not know of Defendant ever entering the shed.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues, "The Jury erred by convicting defendant of *Manufacture Of Cocaine Base* when there was no evidence to sustain a verdict." Defendant contends that, at best, the State proved that cocaine had been present in a microwave oven seized from Defendant's residence. Defendant urges that the State failed to show he was the person who placed the cocaine in the microwave or why the cocaine had been placed in the microwave. Defendant professes that the evidence showed the microwave came with the house Defendant had rented with Ms. Prejean two months prior to the search.

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

9

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (citations omitted).

Defendant is contesting his conviction for manufacturing a cocaine base in violation of La.R.S. 40:967(A), which states in part: "it shall be unlawful for any person knowingly or intentionally: (1) To produce [or] manufacture, . . . a controlled dangerous substance or controlled substance analogue classified in Schedule II."

Schedule II drugs include, but are not limited to,

Coca leaves, cocaine, ecgonine and any salt, isomer, salt of an isomer, compound, derivative, or preparation of coca leaves, cocaine or ecgonine and any salt, isomer, salt of an isomer, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

La.R.S. 40:964 Schedule(II)(A)(4). Additionally, La.R.S. 40:967(B)(4)(a) specifically includes the production or manufacturing of cocaine base:

**Penalties for violation of Subsection A.** Except as provided in Subsection F, any person who violates Subsection A with respect to:

. . . .

(4)(a) Production or manufacturing of cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule II(A)(4) of R.S. 40:964 . . . shall be sentenced to imprisonment at hard labor for not less than ten nor more than thirty years, at least ten years of which shall be served without benefit of parole, probation, or suspension of sentence, and may be fined not more than five hundred thousand dollars.

When viewed in the light most favorable to the prosecution, the evidence presented pertinent to Defendant's conviction for manufacturing cocaine base is as

follows: (1) Defendant and Ms. Prejean moved into the residence at 313 Darrell Street in February 2006; (2) the microwave oven was already at the residence when Defendant and Ms. Prejean began their occupation; (3) a search of the residence in April 2006 resulted in the seizure of both the microwave oven and cocaine from Defendant's kitchen; (4) Defendant admitted both to possessing the powdered cocaine found in the kitchen and to later distributing powdered cocaine; (5) the seizing officer's visual inspection of the microwave's interior revealed a crusting of a crack-like substance in the microwave; (6) field testing of the interior of the microwave showed it was positive for crack cocaine; (7) lab testing of the glass turntable or plate from the microwave oven also showed cocaine base was present in the microwave; (8) microwaves can be used to cook cocaine into crack cocaine; (9) uncovered cocaine will splatter when it is cooked in a microwave; (10) cocaine residue could be removed from the microwave through cleaning; and (11) the house's only other resident, Ms. Prejean, admitted both parties used the microwave oven but denied using it to manufacturing crack cocaine.

We find Defendant's contention that the evidence does not support his conviction for manufacturing cocaine base is without merit. We note that, in addition to the evidence listed above, the jury could have reasonably concluded that new occupants in a rental property would clean the microwave before using it, especially if the interior was visibly crusted with an unknown substance or that, since the microwave was used by both Defendant and Ms. Prejean, someone would have cleaned the microwave or the glass plate in the microwave at some point in the two months they resided there.

Given Ms. Prejean's denial of using the microwave to cook cocaine base and Defendant's admission that the other drugs in the kitchen belonged to him, when the

11

evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant asserts, "The Trial Court erred in allowing testimony into evidence, over objection, concerning a gun battle where defendant shot another man, even though defendant was not charged with the shooting in this case, based on res gestae." Defendant complains this evidence also includes marijuana, guns, a pool of blood, many bullet casings, and the dead body of one person involved in the shootout. Defendant claims this evidence was admitted for the purpose of showing the jury that Defendant was a bad man. Defendant urges the prejudice to his case is evident as the jurors convicted him of manufacturing a cocaine base even though the evidence presented at trial did not support his conviction therefor.

Defendant argues that there should be a limit to the evidence admissible under the res gestae theory. On appeal, the defense restricts its arguments to contesting the evidence as being inadmissible other crimes evidence and to contending the trial court should have limited the amount of the evidence it found to be admissible under the res gestae exception. Thus, this court will only address the evidence listed by Defendant to which trial counsel objected as being inadmissible other crimes evidence. La.Code Crim.P. art. 841; Uniform Rules—Courts of Appeal, Rule 1-3. "Absent a clear abuse of discretion, the trial judge's determinations concerning relevancy and admissibility should not be overturned." *State v. Cosey*, 97-2020, p. 13(La. 11/28/00), 779 So.2d 675, 684, *cert. denied*, 533 U.S. 907, 121 S.Ct. 2252 (2001).

12

Under La.Code Evid. art. 404(B)(1), other crimes, wrongs, and acts of the defendant are admissible if they constitute an integral part of the acts that are the subject of the proceeding. "No pre-trial notice is necessary for other crimes evidence when the evidence forms an integral part of the crime charged." *State v. Williams*, 00-1277, p. 7 (La.App. 3 Cir. 2/28/01), 779 So.2d 1106, 1110.

In *State v. Taylor*, 01-1638, pp. 10-17 (La. 1/14/03), 838 So.2d 729, 741-45, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036 (2004) (citations except for quotations and footnotes omitted), the Louisiana Supreme Court discussed, at length, when other crimes evidence "constitutes an integral part of the act or transaction that is the subject of the proceedings":

> Generally, courts may not admit evidence of other crimes to show defendant is a man of bad character who has acted in conformity with his bad character. However, under La. C.E. art. 404(B)(1) evidence of other crimes, wrongs or acts may be introduced when it relates to conduct formerly referred to as res gestae, that "constitutes an integral part of the act or transaction that is the subject of the present proceeding." Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence "to insure that 'the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.' " The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. In addition, . . ., integral act (res gestae) evidence in Louisiana incorporates a rule of narrative completeness without which the state's case would lose its "narrative momentum and cohesiveness, 'with power not only to support conclusions but to sustain the willingness of the jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.' "
>
> . . . [T]he doctrine of res gestae is designed to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. In *State v. Edwards*, 406 So.2d 1331, 1350-1351 (La.1981), [*cert. denied*, 456 U.S. 945, 102 S.Ct. 2011 (1982),]

13

testimony that defendant and another accomplice arrived at a third person's house; that defendant suggested they "go make a hit;" that they first went to [a] grocery store where defendant stole some wine; that they ultimately went to the victim's house, killed her, and sped away from the scene in the victim's automobile; that they followed another woman to a college campus in an attempt to snatch her purse but abandoned the plan when she saw them coming; and that they went to a convenience store looking for still another "hustle" until the appearance of a police officer terminated the night's activities, was admissible as part of the res gestae in defendant's trial for the victim's murder. Again, in *State v. Brewington*, 601 So.2d 656 (La.1992), this court held the trial court did not err in permitting the prosecution to admit evidence which tended to show the accused possessed crack cocaine and a .357 caliber pistol "three hours after the victim was last seen alive in his presence and less than two hours before her death" because the evidence, "formed an inseparable part of the state's substantial circumstantial evidence linking him to the shooting," and because evidence of cocaine possession was "an integral part of the act or transaction that was the subject of the present proceeding." *See also State v. Matthews*, 292 So.2d 226, 227 (La.1974) (testimony that defendant, who was charged with armed robbery, stopped four persons and demanded their coats and when one person attempted to flee, defendant shot and killed him, demonstrated the robbery and shooting were part of a single, continuous transaction, integrated in both space and time, and testimony and photographs relating to the death of one of the victims were admissible).

. . . .

However, under the rule of narrative completeness incorporated in the res gestae doctrine "the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." . . .

Moreover, the fact the other crimes occurred in different locations with different victims is not dispositive of the issue. As long as the other crimes "constitute an integral part of the act or transaction that is the subject of the present proceeding," they are admissible as res gestae evidence. . . .

. . . .

. . . Moreover, defendant cannot control the state's method of proof. In a criminal prosecution, the state has the burden of proving each element of the crime beyond a reasonable doubt. A defendant may not exclude from the jury's consideration relevant evidence concerning a crime merely by offering to stipulate. (A "familiar standard rule" in the criminal law is that "the prosecution is entitled to prove its case by

evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it.") . . . .

Next, defendant asserts that even if the evidence was admissible as part of the res gestae of the crime, it was nevertheless barred by the balancing test of La. C.E. art. 403 because the testimony discussed above unduly prejudiced the jury. Under La. C.E. art. 403, otherwise admissible evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. Before trial, the trial court held that other crimes evidence was more probative than prejudicial under La. C.E. art. 403.

Previous jurisprudence held that when evidence of other bad acts is admissible as res gestae, the probative value of the evidence need not be balanced against its prejudicial effect. However, current cases question whether the integral-act evidence under La. C.E. art. 404(B) remains subject to the balancing test of La. C.E. art. 403. At any rate, the prejudicial effect of the evidence admitted in the instant case does not substantially outweigh its probative value. Although all evidence of other crimes is prejudicial to defendant, the other crimes evidence was necessary to give the jury a complete picture of the events which gave rise to the instant offense and led to the defendant's ultimate arrest along with a context within which to evaluate defendant's assertions . . . . Furthermore, contrary to defendant's claims, the state cannot be faulted for the amount of other crimes evidence introduced at trial given defendant went on a crime spree . . . .

A "close connexity in time and location is essential to the exception because no notice of the state's intention to introduce evidence of offenses which are part of the res gestae is required." *State v. Haarala*, 398 So.2d 1093, 1097 (La.1981).

Even if the trial court errs in admitting the integral-act evidence, reversal may not be warranted because, "[t]he erroneous introduction of other crimes evidence is a trial error and subject to harmless error review. . . . Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict." *State v. Salter*, 31,633, p. 9 (La.App. 2 Cir. 2/24/99), 733 So.2d 58, 64, *writ denied*, 99-990 (La. 9/24/99), 747 So.2d 1114.

"The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty

15

verdict actually rendered in *this* trial was surely unattributable to the error." *State v. Bell*, 99-3278, p. 6 (La. 12/8/00), 776 So.2d 418, 421-22 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078 (1993)). "The prosecutor generally can overcome this heavy burden only with physical evidence directly connecting the accused with the charged crime, with independent testimonial evidence, or with strong and corroborated circumstantial evidence." *Bell*, 776 So.2d at 422.

In *Taylor,* 838 So.2d 729, the supreme court addressed the admissibility of the evidence concerning the defendant's seven-day crime spree across several states, which culminated in a first degree murder at the Mexican border. The defendant admitted to killing the victim, but he insisted it was a second degree murder committed without specific intent. The *Taylor* court concluded the evidence, regardless of the acts taking place in separate locations from the murder, was admissible as integral-act evidence because the state could not have logically presented its case against the defendant without telling the jury why the suspicions concerning him had developed.

The defendant in *Taylor* further contended that the other crimes evidence was unnecessary given his admission of guilt, but the supreme court determined that the defendant could not prevent evidence being presented simply by stipulating to certain facts. The defendant finally argued that the other crimes evidence, even under the res gestae doctrine, should be subject to the balancing test set forth for relevant evidence under La.Code Evid. art. 403. Although the supreme court declined to specifically hold that the "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time" balancing test set forth in La.Code Evid. art. 403 applied to integral-act evidence, it held "[a]t any rate," the evidence was not unnecessarily prejudicial as the "evidence was necessary to give the jury a

16

complete picture of the events which gave rise to the instant offense and led to the defendant's ultimate arrest along with a context within which to evaluate [the] defendant's assertions." *Taylor*, 838 So.2d. at 745.[1]

In *State v. Wesley*, 28,941, (La.App. 2 Cir. 12/13/96), 685 So.2d 1169, *writ denied*, 97-279 (La. 10/10/97), 703 So.2d 603, the defendant was convicted of being a felon in possession of a firearm. At trial, evidence was admitted showing that parole officers were conducting routine checks on parolees when they saw the defendant standing outside his residence with two other parolees. The defendant saw the parole officers and went inside, but the parole officers were able to stop and search the other two parolees. The officers found a crack pipe and one rock of crack cocaine on one of the men, and the man told the officers that he had purchased the rock from the defendant who kept his crack in a brown pill bottle inside the house. After gaining entry into the house, the officers found a wet brown pill bottle with its cap off; it tested positive for cocaine. Their search also recovered a loaded handgun concealed in the couch.

On appeal, Wesley complained that his conviction for being a felon in possession of a firearm should be reversed because the drug evidence was inadmissible other crimes evidence. The second circuit determined that the cocaine and crack pipe seized from the fellow parolee were admissible because they explained the officers' motivation for searching the defendant's home and the pill bottle was part of the continuous chain of events used to complete the story of the discovery of the weapon.

---

[1]This court has determined that the balancing test set forth in La.Code Evid. art. 403 applies to *res gestae* evidence. *State v. Joseph*, 02-1370, (La.App. 3 Cir. 4/17/03), 854 So.2d 914. However, the defense, both at trial and herein, failed to specifically urge and argue that each item of evidence was unduly prejudicial; instead, Defendant contended the evidence was introduced to show that he is a bad man.

In addition, a person in the business of distributing illegal substances or contraband requires some form of protection. It follows that such an entrepreneur would possess a firearm. This type of evidence is a factor relevant to a determination of the ultimate question of whether it was defendant who possessed the firearm. The trial court properly allowed this evidence.

*Id*. at 1176.

In *Salter*, 733 So.2d 58, the defendant was originally charged with attempted first degree murder, but a jury convicted him of attempted manslaughter after he claimed self-defense at trial. The defendant and a group of his friends exchanged hostile words with some people gathered at a private residence and fired shots into the air before speeding away in a pickup truck. Two of the people from the residence followed them; a brawl ensued and ended with the two retreating and threatening to kill the defendant and his friends. Three other people from the private residence who were curious about the exchange got into a car and searched for the defendant's group to find out the cause of the dispute. When the three in the car approached the area where the defendant and his friends had gathered, the car swerved to avoid a crowd congregated in the roadway. When the car swerved, it entered a yard and hit one of the defendant's friends. One of the man's siblings ran to him while another sibling attacked the car's driver, and the defendant began shooting into the car at the unarmed occupants; his shots hit all three occupants. At trial, the defendant admitted to firing the shots, but he claimed he acted in self-defense since he thought a drive-by shooting was in progress.

The defendant contended that the trial court had erred in allowing the State to introduce the earlier shots he had fired at the private residence into evidence. The trial court had allowed the evidence as an integral part of the continuing event. The *Salter* court found: (1) the evidence constituted a vital component in the chain of events ultimately leading to the shooting and (2) any error in allowing other crimes

18

to be introduced as integral acts evidence was harmless because it was highly unlikely the evidence contributed to the verdict.

In *State v. Grant*, 41,745, (La.App. 2 Cir. 4/4/07), 954 So.2d 823, *writ denied*, 07-1193 (La. 12/7/07), 969 So.2d 629, the defendant was convicted of one count of possessing a schedule II controlled dangerous substance with intent to distribute. The defense argued on appeal that the trial court erred in admitting other drugs into evidence when he had not been charged with possessing those drugs and when the other drugs had been recovered at the same time as the schedule II controlled dangerous substance for which the defendant was charged. In examining whether the evidence constituted an integral part of the chain of events, the second circuit restated that the test for so determining was "not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness." *Id*. at 835 (*quoting State v. Gaddis*, 35,661 (La.App. 2 Cir. 3/14/03), 839 So.2d 1258, *writ denied*, 03-1275 (La. 5/14/04), 872 So.2d 519, *cert. denied*, 544 U.S. 926, 125 S.Ct. 1649 (2005)). The second circuit found the evidence to be an integral part of the circumstances as the additional contraband helped the State prove the apartment was being used to distribute drugs, which helped the jury evaluate the defendant's intention.

Defendant cites to *State v. Charles*, 502 So.2d 1095 (La.App. 4 Cir.), *writ denied*, 505 So.2d 56 (La.1987), in support of his argument that there should be a limit on *res gestae* evidence. The defendant in *Charles* was tried and convicted of one count of aggravated burglary and one count of aggravated rape for breaking into someone's home and forcing her to perform sex acts at knife point. At the defendant's trial, the state introduced evidence of a second, similar burglary and rape

of a different victim; however, the defendant was acquitted of those charges. The fourth circuit found this to be reversible error. Unlike the instant case, the evidence presented in *Charles* was presented to demonstrate the defendant's mode of operation and it was not introduced as an integral act.

Defendant also cites to *State v. Taylor*, 34,096 (La.App. 2 Cir. 12/15/00), 774 So.2d 379, *writ denied*, 01-312 (La. 12/14/01), 803 So.2d 984. However, there was no "other crimes" objection discussed in *Taylor*. Instead, the defendant argued that his post-rape brutality to the victim should not be considered in determining the sufficiency of the evidence against him; in essence, whether his stabbing the victim after the rape contributed to the aggravated nature of the offense. The second circuit noted that there had been no objection to the evidence at trial and that the stabbing was admissible as res gestae.

We find that the trial court did not err in allowing the evidence objected to as other crimes evidence to be admitted as an integral part of the circumstances at issue. The death and evidence of the death led to the discovery of the drugs, which included both the marijuana and the cocaine, and the firearms evidence. Defendant admitted to possessing cocaine with the intent to distribute and to simple possession of cocaine; he only denied the manufacturing of cocaine base, and there was sufficient evidence in the record to prove Defendant was also guilty of that offense. Any error in questioning Defendant about his actually firing the weapons on the evening in question was harmless in the instant case as the other evidence already indicated to the jury that this was the most probable scenario.

Therefore, this assignment of error is without merit.

20

## ASSIGNMENT OF ERROR NUMBER THREE

Defendant claims, "The Trial Judge erred in failing to grant a mistrial upon motion of attorney for defendant or alternatively failing to admonish the jury to disregard the statement of the witness." During cross-examination of a prosecutorial witness, the witness stated Defendant had been listed as a homicide suspect. When defense counsel moved for a mistrial, the court denied the motion and told defense counsel both that the defense had solicited the information and that, if Defendant wished to avoid the topic, the defense needed to avoid it. Defendant states further error occurred when the district court failed to admonish the jury to disregard the remark.

The remark arose when the defense was questioning a witness about a crime lab report:

MR. ASHY: Thank you, Keith.

BY MR. ASHY:

Q.    Who are listed as suspects? Read me the names of the suspects, please.

A.    The suspects are Chaisson, T.; Francis, C.; Prejean, D.; Wiltz, J.;and Eaglin, Gary is the victim.

Q.    That's actually a victim.

A.    Sorry.

Q.    Okay. So we have -- When that was submitted -- Were you the one that submitted that to the crime lab?

A.    Yes, sir.

Q.    And those were the people that you listed as suspects on that particular 4.5 grams of cocaine, correct?

A.    Yes, sir.

21

Q.    Okay. Now, as far as you know -- Those were your suspects in this case. As far as you know, that cocaine could have belonged to any of those people, couldn't it?

A.    If you're asking do I think --

Q.    Do you have any knowledge?

A.    No, sir, I don't have no knowledge of that.

Q.    Okay. You have no knowledge of who the cocaine belonged to, correct?

A.    Correct.

Q.    All we know is that, when you sent the thing to the lab, those are the people that you listed as the suspects, correct?

A.    For a homicide, yes.

Q.    Okay. But they were listed as the suspects on these drugs, weren't they?

A.    Yes, sir.

        MR. ASHY: Your Honor, can I approach the bench?

        THE COURT: Yes.

(THE FOLLOWING SIDE-BAR CONFERENCE WAS HELD

        OUTSIDE OF THE HEARING OF THE JURY)


        MR. ASHY: I'm going to move for a mistrial. He just mentioned a homicide. My client's not being -- And I didn't ask about a homicide. I asked him about those drugs.

        MR. STUTES: You kept pounding on him.

        THE COURT: But you pushed him on the subject.

        MR. STUTES: You kept pounding on him.

        THE COURT: You did, Mr. Ashy. It was something you elicited. He did not volunteer. So, if you want -- if you want to stay away from that, you need to stay away from that.

22

The defense did not request an admonition.

We note that the witness was referring to a lab report giving the results of drug tests performed on some of the evidence. The header of the report listed the case number, the crime lab number, as well as several suspects and one victim. Because the report lists the result of chemical analyses performed on evidence collected, it initially appears the suspects listed are the suspects in the drug case; however, there was no indication that there was any sort of drug-related victim. Thus, the clear designation of Gary Eaglin as a victim in the case identification information indicates that the suspects were most likely primarily listed as suspects in the homicide of Gary Eaglin. However, based on the record currently before this court, there is no way to be certain whether the suspects were listed primarily as suspects in the drug case or the murder case other than the witness' clarifying the matter to state that the suspects had been listed for a homicide, but they were also suspected of possession of the drugs.

Under La.Code Crim.P. art. 770, a judge's, prosecutor's, or court official's improper reference to another offense committed by the defendant is grounds for mistrial. This provision has been applied to witnesses' statements elicited by the prosecution; however, this article does not apply to statements elicited from witnesses by the defense. *See State v. Giles*, 04-359 (La.App. 3 Cir. 10/6/04), 884 So.2d 1233, *writ denied*, 04-2756 (La. 3/11/05), 896 So.2d 62.

Under La.Code Crim.P. art. 771, the defense may request and receive admonishments for statements made by witnesses. However, although Defendant, on appeal, complains that the trial court should have, at least, issued an admonishment

23

to the jury, as previously noted, the defense, at trial, did not request any such admonishment.

> A mistrial under the provision of Article 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. A mistrial is warranted when certain remarks are considered so prejudicial and potentially damaging to the defendant's rights that even a jury admonition could not provide a cure. Mistrial is a drastic remedy that is authorized only where substantial prejudice will otherwise result to the accused. A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion.

*State v. Johnson*, 06-1235, pp. 8-9 (La.App. 1 Cir. 12/28/06), 951 So.2d 294, 300 (citations omitted). "A mistrial is not required under either Article 770 or Article 771, absent a showing of a pattern of unresponsive answers or improper intent by the police officers." *State v. Cho*, 02-274, p. 20 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 448, *writ denied*, 02-2874 (La. 4/4/03), 840 So.2d 1213.

In *Johnson*, the first circuit discussed whether a mistrial was warranted in a case where, when defense counsel asked how the defendant had been developed as a suspect, the witnesses stated that the defendant had been arrested for another, similar, offense. The defense objected, and the State argued that the witness was answering the question and should be allowed to finish his statement. The trial court denied the objection upon finding both that the defense had elicited the information and that the witness had been answering the defense's question. The first circuit, upon finding the information had been elicited by defense counsel, found no abuse of the trial court's discretion. In so doing, the first circuit cited to *State v. Tribbet*, 415 So.2d 182, (La.1982), for the premise that "the state cannot be charged with testimony elicited by defense counsel implying that the defendant had previously committed the other crimes, and the defendant cannot claim reversible error on the basis of that which he elicited." *Johnson*, 951 So.2d at 301; *see also State v. Dozier*,

24

97-1564, (La.App. 3 Cir. 5/20/98), 713 So.2d 729, *writ denied*, 98-1694 (La. 11/25/98), 729 So.2d 573.

The defense's question was, "All we know is that, when you sent the thing to the lab, those are the people that you listed as the suspects, correct?" Although, at trial, the defense attorney stated he only asked about the drugs, the question, as posed, did not restrict the witness' answer to possession of the drugs. Additionally, the "all we know" included in the question could have reasonably led the witness to believe that defense counsel was seeking any additional information within the scope of the witness' knowledge. On appeal, Defendant does not allege either that the defense did not actually elicit the information or that the answer was not responsive to the question asked.

Accordingly, this assignment of error is without merit.

### ASSIGNMENT OF ERROR NUMBER FOUR

Defendant alleges, "The Trial Court erred by rendering a sentence, which was excessive considering the facts and circumstances of the case." Defendant contests his sentences as being excessive based on his status as a first offender and lack of felony record.

Because Defendant did not file a motion to reconsider sentence with the trial court, the review of his sentence is limited to bare excessiveness. *See State v. Hebert*, 08-542, (La.App. 3 Cir. 11/5/08), 996 So.2d 688.

Standard of review

This court has previously discussed the standard for reviewing excessive sentence claims:

[Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our

25

sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331 (citations omitted)(second alteration in original). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

In *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, the fifth circuit held that a reviewing court should consider three factors in reviewing sentences imposed by the trial court: (1) "the nature of the crime," (2) "the nature and background of the offender, and" (3) "the sentence imposed for similar crimes by the same court and other courts."

Sentencing hearing

The district court imposed Defendant's sentences after considering the presentence investigation report, hearing the pleas for leniency presented by the defense, and considering additional statements by counsel. The sentencing court found that Defendant had two prior misdemeanor convictions, but no prior felony convictions; that the drug convictions arose from two separate incidents, which indicated a pattern of drug activity; that the second drug offense, possession with intent to distribute, occurred while Defendant was on bond for the two charges arising

26

from the earlier incident; that Defendant's convictions were a result of his choices; and that Defendant's incarceration would be a hardship on his family.

Manufacturing cocaine base

For manufacturing cocaine base, the trial court ordered Defendant to serve ten years at hard labor without benefit of probation, parole, or suspension of sentence but with credit for time served. Defendant's sentence for this offense is the minimum term of imprisonment permitted by law. La.R.S. 40:967(B)(4(a).

Simple possession of cocaine

For simple possession of cocaine, Defendant received five years at hard labor with credit for time served, which is the maximum term of imprisonment permitted by La.R.S. 40:967(C)(2).

In a case involving two counts of cocaine distribution and one count of simple possession of cocaine, the second circuit determined that the maximum five-year sentence for possession of cocaine was appropriate because the evidence showed the defendant's drug use had extended beyond personal use, making the defendant the worst type of cocaine possessor. *State v. Graham*, 35,184, (La.App. 2 Cir. 10/31/01), 799 So.2d 645, *writ denied*, 02-59 (La. 11/8/02), 828 So.2d 1114.

The sentencing court ordered Defendant to serve his penalties for manufacturing a cocaine base and for simple possession of cocaine concurrently. Thus, Defendant will serve this five-year sentence simultaneously with his ten-year sentence.

Possession of cocaine with intent to distribute

For Defendant's possession of cocaine with intent to distribute conviction, the district court imposed eight years at hard labor with two years to be served without benefit of probation, parole, or suspension of sentence but with credit for time served.

27

Defendant's sentence for possession with intent to distribute is more than the minimum two years required by law, but it is also less than one-third the maximum possible penalty, thirty years. La.R.S. 40:967(B)(4)(b).

The sentencing court then ordered Defendant's eight-year sentence to run consecutively with his other two sentences.

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

La.Code Crim.P. art. 883.

This court has previously held that imposing consecutive sentence for offenses occurring on separate dates and under different circumstances did not constitute an abuse of discretion. *State v. Baker*, 08-54, (La.App. 3 Cir. 5/7/08), 986 So.2d 682. The fifth circuit has held that consecutive sentences are indicated for offenses occurring on different dates and locations. *State v. Wilson*, 99-105, (La.App. 5 Cir. 7/27/99), 742 So.2d 957, *writ denied*, 99-2583 (La. 2/11/00), 754 So.2d 935. The fifth circuit has applied this holding to distribution of cocaine occurring on different days. *State v. Dillon*, 01-906, (La.App. 5 Cir. 2/26/02), 812 So.2d 770, *writ denied*, 02-1189 (La. 4/21/03), 841 So.2d 779.

CONCLUSION

Defendant received the minimum sentence possible for manufacturing cocaine base, because the five-year sentence imposed for simple possession of cocaine was ordered to run concurrently with the ten-year penalty for manufacturing cocaine base. Defendant received a low-range sentence for his possession with intent to distribute

conviction. Additionally, the possession with intent to distribute conviction arose from a second incident happening while Defendant was out on bond for the first two drug offenses. Therefore, we find the sentencing court did not abuse its discretion in sentencing Defendant or in ordering the penalty imposed for possession with intent to distribute to run consecutively to the sentences for the other two drug convictions.

Accordingly, this assignment of error is without merit.

## CONCLUSION

The Defendant's convictions and sentences are affirmed.

**AFFIRMED**.