467 So.2d 41 (1985)
STATE of Louisiana
v.
John A. LANGFORD.
No. KA 2465.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1985.
Rehearing Denied April 26, 1985.
Writ Granted June 28, 1985.
*42 William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Maria M. Lazarte, Asst. Dist. Atty., New Orleans, for defendant-appellee.
Dwight Doskey, Craft & Doskey, Milton P. Masinter, Milton E. Brener, Garon, Brener & McNeely, New Orleans, for defendant-appellant.
Before GULOTTA, SCHOTT and KLEES, JJ.
SCHOTT, Judge.
After a bench trial, defendant was convicted of theft of $848,879.39 from Hibernia National Bank between April 1, 1981 and September 24, 1981 and sentenced to eight years at hard labor.
On March 18, 1981 defendant opened a NOW account, i.e., an interest-earning checking account, at the Hibernia National Bank in New Orleans with a deposit of $5,362.21. When the account was processed into the bank's computer it was erroneously assigned a code which provided for unlimited overdrafts without charge to the customer. On September 24 the bank was contacted to verify that a check defendant was offering to deposit at a savings and loan association was good. Upon checking the account, the bank discovered it was overdrawn by $848,879.39. Further investigation revealed that the account had become overdrawn a few weeks after it was opened, no additional deposits were ever made, and defendant had written over two hundred checks on the account. The bank immediately demanded payment of the overdrafts by defendant who responded with an offer to execute a note in the bank's favor.
A week before defendant opened his NOW account he had applied for a $225,000 loan from the bank, but he was turned down because of his credit standing.
Defendant's NOW account was processed almost exclusively by computer. Each day defendant was notified of additional overdrafts and the current negative balance was shown. At the end of each month he was sent a statement showing *43 the negative balance in his account and returning the checks he wrote during the month. Because of the erroneous classification assigned to the account initially as one eligible for unlimited overdrafts they would not automatically come to the attention of anyone on a day to day basis. Unfortunately for the bank, daily computer printouts which were supposed to be reviewed by a manager supervising defendant's account on a daily basis were routinely thrown in the trash by some clerk and never reviewed by the manager.
An examination of the record disclosed no errors patent.

Assignments of Error 1 and 3.
By these assignments defendant argues that there was no evidence of a non-consensual taking or an intent to permanently deprive. He contends that the bank had a choice between dishonoring each check or creating an overdraft and that an overdraft is simply a loan to the customer.
In order to convict defendant of theft the state had to prove the taking of the money from Hibernia without its consent and with the intent to deprive it permanently of the money. These elements had to be proved not only beyond a reasonable doubt, but since the evidence was circumstantial every reasonable hypothesis of defendant's innocence as to each element had to be excluded. State v. Hoffer, 420 So.2d 1090 (La.1982).
The evidence absolutely precludes the possibility that the bank consented to defendant's conduct. The bank was a victim of its own mistakes, one in the erroneous coding of the account when it was first opened, and the other in the destruction of the computer printouts before they could be reviewed by a responsible official. The bank's intention was to allow no overdrafts on NOW accounts but this was frustrated by its unfortunate errors. That the bank consented to defendant's taking $848,000 as some sort of loan is not a reasonable hypothesis when its refusal to loan defendant $225,000 one week before the account was opened is considered.
In State v. Johnson, 408 So.2d 1280 (La. 1982) the following appears at page 1283:
"In order to consent to the theft of his property, an owner must do more than passively assent to the taking. Where the criminal intent of design is neither suggested nor ratified by the owner, he may even facilitate the taking of the goods in order to detect the thief."
Defendant's argument on this assignment is that the bank did suggest criminal intent to defendant by sending him overdraft notices which failed to request repayment of the account. However the first answer to this argument is that the bank suggested no such thing to defendant. These notices were not being consciously sent to defendant but were automatically generated by a computer as a result of an error in the initial coding of the account. Defendant had to know a mistake was being made and could not believe these notices were an invitation to keep the money. It would be unreasonable to hypothesize otherwise.
The only reasonable hypothesis for defendant who found himself getting to spend an unlimited amount of the bank's money shortly after he was denied a loan of $225,000 is that he knew he was the beneficiary of a mistake on the bank's part. We find the following from La Fave & Scott Crim.Law HB, Section 85, page 629 to be applicable and correct:
"... It is well settled that the recipient of the mistaken delivery who appropriates the property commits a trespass in the taking, and so is guilty of larceny, if, realizing the mistake at the moment he takes delivery, he then forms an intent to steal the property...."
Perhaps it is arguable that defendant did not realize the mistake and did not form an intent to steal when the first overdrafts were written, but at some point when he had continued to receive the notices along with statements showing his huge negative balance he had to realize the mistake. At this point his failure to notify the bank or take some action to refund the money proved his intent to deprive to the exclusion *44 of any reasonable hypothesis of innocence. At some point he arrived at the same position as the individual who presents a check for $10 to be cashed and receives $100 from the teller. Unless he returns the money immediately, he is guilty of larceny because he realizes a mistake has been made and he intends to keep the money.
Turning to the proof that defendant intended to deprive Hibernia permanently of the money R.S. 15:445 states that though intent is a question of fact, it need not be proven as a fact, but may be inferred from the circumstances. Here we have a man who knows the bank would not voluntarily loan him $225,000 but who finds himself getting way over that amount, never makes any deposits to the account, continues to withdraw large amounts, and says nothing to the bank until he spent $848,000 and the bank called him in. More specifically he opened the account on March 18 just a week after the loan was refused, the account became overdrawn on April 3, and by May it was overdrawn by $2,700. On May 12 he wrote a check for $6,770, and on June 30 he wrote ten checks on one day to various savings and loan associations for a total of $100,000. The only reasonable hypothesis flowing from this pattern is that defendant intended to deprive the bank permanently. It stands to reason that his criminal intent was present even if he had some vague, indefinite intention to pay the money back. Significantly, when the bank caught its mistake and called on defendant to pay the money back he could not. These assignments have no merit.

Assignment of Error 2
By this assignment defendant contends the sentence of eight years was excessive. The maximum sentence was ten years. The sentencing transcript shows that the trial judge carefully considered the guidelines of C.Cr.P. Art. 894.1 in arriving at a sentence. He noted that there were no mitigating circumstances such as provocation or social considerations such as dependents to warrant a sentence without imprisonment. Likewise he commented that a lesser sentence would deprecate the seriousness of a crime of such magnitude and noted that much of the money taken by defendant was never accounted for. Given this meticulous attention to Art. 894.1 the trial judge is entitled to broad discretion in sentencing. State v. Gordon, 444 So.2d 1188 (La.1984). We are not convinced that such discretion was abused. This assignment is meritless.
The conviction and sentence are affirmed.
AFFIRMED.