# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-1516**

**STATE OF LOUISIANA**

**VERSUS**

**DEANNA GASPARD**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 146493
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, J. David Painter, and David E. Chatelain,[*] Judges.

**AFFIRMED.**

**Charles A. Riddle, III, District Attorney**
**Andrea D. Aymond, Assistant District Attorney**
**P.O. Box 1200**
**417 N. Main Street**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
   **State of Louisiana**

**Angelo J. Piazza, III**
**P.O. Box 429**
**Marksville, LA 71351**
**(318) 253-6423**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Deanna Gaspard**

---

[*] Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**COOKS, Judge.**

Defendant, Deanna Gaspard, was charged by bills of information with three counts of "Forgery," five counts of "Identity Theft," and three counts of "Theft Valued over $1,000.00." Trial was continued on several occasions in an effort to allow Deanna Gaspard to make restitution in the amount of $75,000. Eventually, Defendant pled guilty to all charges. The plea was entered with the understanding that she would receive a probated sentence if she paid $75,000 prior to sentencing. On the date of the sentencing hearing, Defendant appeared having tendered no restitution whatsoever. The following colloquy occurred at the plea hearing:

> Q. Now Ms. Gaspard, The State claims in the three different docket numbers that while employed by The Cutting Edge in the years 2005, 2006, and 2007 that you committed acts of Theft, they also contend that on March 18, 2006, September 5th, 2007, December 28th, 2007 you committed Forgery and that during the years 2005, 2006, 2007 you committed the offenses of Identity Theft. Have you read each and every charge in the Bills of Information that have been filed?
>
> A. Yes, sir.
>
> Q. And did you in fact commit the offenses as described in those Bills of Information?
>
> A. Yes, sir.
>
> A. Will you describe to me please, for my benefit, in the event that you do not come up with the [restitution] money and so I know, tell me what happened while you were employed with The Cutting Edge causing you to commit these offenses and if you have any statement to make.
>
> . . . .
>
> A. Kind of hard to say, I mean I worked for Ms. June for eight years. I loved my job, I loved working for her, she treated me like a second daughter and and I treated her like a second mama. And if I needed help, she would help me and sometimes I was just afraid to ask her. She would give me her credit card and I'd pay my house note, I just ... I don't know what else to say, I know it was wrong and I apologize deeply for what I did to her. I know I hurt her.

Q.	There's an indication that you did more than just pay your house note. I mean because one of the ... on the theft the allegations of the three bills that you took in excess of those three alone of $33,000.00.

A.	Like house note, I'd pay my utilities.

Q.	You used your position working in Cutting Edge at times used the credit card to pay your personal expenses and also I think you signed the name, according to the bill, you signed the name of Danny Fadler to a legal document. Also Barron Kaylo?

A.	Um hum.

Q.	And also Barron Kaylo again on the forgeries, is that correct?

A.	Yes.

Q.	There's one forgery alleging you signed Danny Fadler's name to a credit card application with GE Consumer Finance.

A.	I did sign that but he was sitting across the desk from me when we did the application.

Q.	But you admit you signed it?

A.	Yes I did sign it.

Q.	And there's an allegation that you signed the name of Barron Kaylo or Kayle it says at the Cottonport Bank?

A.	Yes.

Q.	And you did that on two occasions, September 5th, 2007, December 28th, 2007, is that right?

A.	Yes. I did.

Q.	And there's also what we've talked about the identity theft where you used the cards of either the Cutting Edge or personal information belonging to June Fadler or Danny Fadler, is that correct?

A.	Yes.

Q.	And the amounts that are listed in all of these bills of information, Ms. Gaspard, you are not disputing those amounts, is that correct?

A.          No, sir.

After the sentencing hearing, Defendant was sentenced to ten years on count one of "Identity Theft" and concurrent sentences on counts two through five. She likewise received a ten-year sentence on count one of the "Forgery" charges and concurrent ten-year sentences for counts two and three of the "Forgery" charges. She also was sentenced to ten years on count one of the "Theft" charges and concurrent sentences  on counts two and three of the "Theft" charges. Thus, as a practical matter, Defendant was sentenced to thirty years of incarceration. It was agreed at the hearing that "at anytime during the period of incarceration if the $75,000 is paid Ms. Gaspard would be released from custody" and "placed on felony probation for a period of five years."

Defendant has lodged this appeal contending her sentences are excessive.[1]

## ASSIGNMENT OF ERROR NO. 1:

In this assignment of error, Defendant claims the total of thirty years that she received is excessive. Defendant received ten years on count one of each crime, to run concurrently with the other charges. Ten years is the maximum term for "Forgery," pursuant to La.R.S. 14:72(D), for "Identity Theft," pursuant to La.R.S. 14:67.16(C), and for "Theft Valued over $1,000.00," pursuant to La.R.S. 14:67(B)(1).

The crux of Defendant's complaint appears to be that the combined sentences for all the charges (five counts of identity theft, three counts of forgery, and three

---

[1] Although the matters were not formally consolidated, Defendant entered guilty pleas to all the charges under the three bills at the plea hearing. Further, the sentences were all pronounced at the same sentencing hearing, and were inter-dependent. Defendant's motion for appeal also included all three trial docket numbers.

The trial court clerk's office prepared three records, each corresponding to one of the dtrial court docket numbers. Each of the records was filed with a separate appellate docket number. The three appeals will be handled together, as they are factually and procedurally related. All three appellant briefs are identical to one another, and each attack the "[e]xcessiveness of a thirty-(30) year sentence for a [sic] theft charges," even though only one of the docket numbers encompasses general theft charges. The motion for appeal is similarly worded.

-3-

counts of theft) amounted to thirty years at hard labor.

This court has previously addressed arguments regarding consecutive sentences in the context of excessive-sentence claims. *See, e.g., State v. Wood,* 08-1511 (La.App. 3 Cir. 6/3/09), 11 So.3d 701; *State v. Hawkins*, 06-1599 (La.App. 3 Cir. 5/2/07), 956 So.2d 146, *writ denied*, 07-1156 (La. 12/7/07), 969 So.2d 627.

Whether sentences should be consecutive or concurrent is addressed by La.Code Crim.P. art. 883:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

This court has elaborated:

> Defendant next contends that he should have received concurrent, rather than consecutive sentences because his convictions arose out of the same course of conduct. Pursuant to La.Code Crim.P. art. 883, concurrent sentences are preferred when the offenses arise out of a common scheme or plan, particularly if the offender is a first-time offender. *State v. Thibodeaux*, 05-1187 (La.App. 3 Cir. 3/1/06), 924 So.2d 1205, *writ denied*, 06-700 (La.10/6/06), 938 So.2d 65. However, consecutive sentences are not prohibited; rather, the trial court must specifically justify its imposition of consecutive sentences.
>
> In *State v. Coleman*, 32,906, p. 42 (La.App. 2 Cir. 4/5/00), 756 So.2d 1218, 1247-48, *writ denied*, 00-1572 (La.3/23/01), 787 So.2d 1010 (citations omitted), the court identified several factors a trial court should consider when imposing a consecutive sentence:
>
> > [T]he defendant's criminal history; the gravity or dangerousness of the offense; the viciousness of the crimes; the harm done to the victims; whether the defendant constitutes an unusual risk of danger to the public; the defendant's apparent disregard for the property of others; the potential for the defendant's rehabilitation; and whether the defendant has received a benefit from a plea bargain.

-4-

*State v. Massey*, 08-839, pp. 5-6 (La.App. 3 Cir. 12/10/08), 999 So.2d 343, 348.

As for the issue of overall excessiveness, this court has explained the analysis as follows:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.
>
> *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331 (citations omitted)(second alteration in original). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).
>
> In *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183, the fifth circuit held that a reviewing court should consider three factors in reviewing sentences imposed by the trial court: (1) "the nature of the crime," (2) "the nature and background of the offender, and" (3) "the sentence imposed for similar crimes by the same court and other courts."

*State v. Chaisson*, 09-119, pp. 25-26 (La.App. 3 Cir. 10/7/09), 20 So.3d 1166, 1182-83.

Also, Defendant in this case received maximum sentences. Regarding such sentences, this court in *State v. Burnaham*, 03-1647, p. 5 (La.App. 3 Cir. 5/12/04), 872 So.2d 637, 641, explained:

> [M]aximum sentences are usually reserved for the most egregious and blameworthy of offenders. *State v. LeBlanc*, 578 So.2d 1036 (La.App. 3 Cir.1991), *writ denied*, 620 So.2d 833 (La.1993). In reviewing the

imposition of a maximum sentence, the First Circuit has held:

> This Court has stated that maximum sentences permitted under statute may be imposed only for the most serious offenses and the worst offenders, *State v. Easley*, 432 So.2d 910, 914 (La.App. 1 Cir.1983), or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. See *State v. Chaney*, 537 So.2d 313, 318 (La.App. 1 Cir.1988), *writ denied*, 541 So.2d 870 (La.1989). A trial court's reasons for imposing sentence, as required by La.Code Crim. P. art. 894.1, are an important aid to this court when reviewing a sentence alleged to be excessive. *State v. McKnight*, 98-1790 at p. 25, 739 So.2d [343] at 359 [ (La.App. 1 Cir.1999) ].

Whether Defendant was the worst type of offender for the offenses at issue is a question congruent with the first two factors in *Lisotta* and *Chiasson*, i.e., the nature of the offender and the offense. At the hearing below, the trial court observed:

BY THE COURT:

> All right[,] this cause is before the Court for sentencing. The record reflects that on August 26, 2008, Deanna Gaspard entered a plea of not guilty to a charge of five counts of Identity Theft and also the Forgery and Theft and the matter was set for trial. The negotiations since that time had resulted in a plea agreement where Ms. Gaspard would receive a probated sentence if she were to pay the sum of $75,000.00. During the course of this proceeding, there were many occasions where this matter was postponed for one reason or another[,] mainly for Ms. Gaspard to attempt to get the necessary funds. On July 14, 2009, however, the plea agreement was confirmed and Ms. Gaspard withdrew her plea of not guilty and entered a plea of guilty, remanded for sentencing today. After the plea was entered and these comments Ms. Gaspard[,] I will tell you that are being made are in case this and the matter gets appealed. After the plea was entered, Deanna Gaspard made an on the record apology to the victim, June Fadler and later the Court was informed that Ms. Fadler and Ms. Gaspard met in the hallway and hugged, cried and had a good meeting. This information however was proven to be or disputed by other members of [sic] individuals who were out in the hall. The information that has been supplied to the Court follows [sic] about Deanna Gaspard follows a very long pattern of deceit, deception and dishonesty[,] which according to information provided to this Court has been maintained for a period of several years.

> In preparation for sentencing, the Court has reviewed the entire record of this proceeding, independent review of applicable law[,] and the Court has received multiple items of correspondence from multiple

individuals concerning Deanna Gaspard and her life and Ms. Gaspard[,] for the first time in my twelve and a half years as judge each and every item of correspondence that I have received has included a description of one event or another wherein you have allegedly lied, cheated or stolen from the person issuing the correspondence. I have not received one item of correspondence asking for leniency, mercy or attributing to your good character or high moral fiber. These items of correspondence have been received from your family members, friends, alleged friends of yours, family and friends of the victim, Ms. Fadler and some non[ ] family members and they have been multiple in their receipt and have been somewhat of a shock in the number and the claims that have been made. These items of correspondence [sic] and I will tell you a few of the highlights and [s]ome of the comments made.

["]Deanna Gaspard blatantly took advantage of June Fadler or shortly after Danny Fadler's death Deanna was checking in on Ms. June daily. We were grateful for this until we learned that Deanna's motive was not to was not to [sic] console Ms. June but was to intercept her mail so she could cover her tracks. Ms. June is a very generous person and has given Deanna money in the past to help her out. Deanna accepted this gratitude by stealing.["] Another comment.

. . . .

["]The financial impact that Deanna Gaspard's theft have [sic] had on the Cutting Edge, Community Mental Health Center has been serious. Business has suffered as a result of the damage to the reputation of the business.["] Another comment. ["]That many Bills of Information filed by the Avoyelles Pariah District Attorney are correct insofar as the allegations and the dollar amount. However, they failed to show the total number of occurrences and the extreme length that Deanna Gaspard went to perpetrate her actions.["] Next. ["]Deanna Gaspard used the credit card of the Cutting Edge and/or June and Danny Fadler more than one hundred thirty times in 2005. More than one hundred thirty times in 2006 and 2007 and used Danny Fadler's credit cards more than one hundred sixty times.["] Next. ["]The Cutting Edge and other corporations owned by the Fadlers, Rusty Gate and SK Transportation had to borrow money to continue operations due to the vast amounts of cash that was stolen by Deanna Gaspard.["] Another comment. ["]Deanna Gaspard went to extreme lengths of deception to hide her thefts by forging other persons names making fake checks, scanning and changing bank statements.["]

Although every item of correspondence outlines a specific situation wherein you allegedly committed crimes against the victims here and other crimes who wrote the letters [sic] it was simply amazing to me the tone of these letters and the information in the letters concerning other offenses that you may have committed in your life. That type of activity is similar to that [sic] to the type of activity which you are now being sentenced for. The information provided to the Court

unqualifiedly shows that June and Danny Fadler treated you like a member of their family. They loaned you money. They gave you money and they gave you a good paying job. I further learned and was told by items of correspondence that after you lost your job because of being caught on these offenses that you took a job at a law firm in Alexandria where one of the step-children of June Fadler is employed. This occurring at a time where Ms. Fadler is involved in serious litigation with these step-children and against the step-children concerning certain property that was owned by she and Mr. Fadler. And that all raised highly auspicious motives as to why you would go work at this area at this law firm.

The evidence submitted to me Ms. Gaspard[,] and I don't know you[,] but all of the evidence submitted to me from reading the D.A.'s file and reading these various items of correspondence simply indicate a life of deceit, deception and dishonesty. The deceit, deception and dishonesty was certainly confirmed by the multiple acts that were committed upon June Fadler, the Cutting Edge, Danny Fadler and their businesses.

In further preparation of these sentencing, I have reviewed the sentencing guidelines outlined in Article 894.1 of the Louisiana Code of Criminal Procedure and I find that there is definitely an undue risk that during any period of a suspended sentence or probation you would commit another crime. I am of the firm belief that you are in need of correctional treatment or a custodial environment that can be provided most effectively by your commitment to an institution. Any lesser sentence then [sic] the sentence that I issue herein would deprecate or reduce the seriousness of the multiple crimes that you have been that you have committed [sic]. In looking at the factors in Article 894.1, I considered the following aggravating factors. Number (1). Your contact constituted I mean your conduct[,] I'm sorry[,] constituted deliberate cruelty to June Fadler. You committed these crimes during times when you knew Ms. Fadler was battling cancer and thereafter at times she was dealing with the death of her husband. Thereafter, she was involved with litigation with your [sic] step-children[2] and your actions suggest continued involvement. I consider these actions to constitute deliberate cruelty to June Fadler. Number (2). You knew that June Fadler was particularly vulnerable due to her ill health. Danny Fadler was also in ill health during a portion of the time wherein the crimes were committed. Number (3). The crimes that you committed and the items that you and what you received as a result were many items of value mainly money[,] or the use of money[,] to purchase your personal items during the commission of your offense. Number (4). You used your position and status with the Fadlers as a close friend and employee to facilitate and ease the commission of your crimes. Number (5). It is possible and I find probable that you committed some of your offenses in order to facilitate or conceal the commission of other offenses involving other individuals

---

[2]The litigation involved Ms. Fadler's step-children.

although I cannot state this with certainty. Number (6). The offense resulted in a significant economic loss to the victims. Number (7). The offense involved multiple victims that being Danny Fadler, June Fadler, the Cutting Edge, Rusty Gate, SR Transportation and multiple incidents for which separate sentences have not totally been imposed. Number (8). You have apparently persistently been involved in similar type[s] of conduct[,] although through your multiple acts of deception you have not yet been prosecuted for same. Number (9). This is a major economic offense. Number (10). Considering mitigating circumstances for you I find none. I find nine specific aggravating circumstances that are set out in Article 894.1 and no mitigating circumstances. The only potential mitigating factor is your plan to make restitution to Ms. Fadler in the sum of $75,000.00. However[,] during this prolonged period of time[,] each and every promise today [sic] was meant [sic] with a request for more time including a request today.

Returning to the consecutive nature of some of the sentences, pursuant to *Massey*, the trial court's detailed reasoning supports its ruling making one of the sentences for one count from each of the bills consecutive. Further, it appears the Defendant's conduct did not constitute an ongoing scheme or transaction. Her own description of her actions, recited at the plea hearing, depicts a series of crimes of opportunity, rather than an ongoing plan. Thus, the trial court did not err by ordering some of the sentences to run consecutively.

Regarding the maximum terms Defendant received, we will examine each crime individually. We note there are few cases discussing maximum sentences for forgery. This court has explained:

> The court sentenced Defendant to two years less than the maximum sentence for forgery. In *State v. Gant*, 29,169 (La.App. 2 Cir. 1/22/97); 687 So.2d 660, *writ denied*, 97-465 (La.6/30/97); 696 So.2d 1006, the court found that a maximum sentence of ten years was not an abuse of the trial court's discretion, even though the young, pregnant defendant was technically a first offender. The defendant had similar offenses as a juvenile that indicated a propensity to violate the law. Also, she committed the crime while still on juvenile probation, and had reduced her exposure by plea-bargaining. *Id.* at 662-663. In *State v. Pegues*, 26-133 (La.App. 2 Cir. 8/17/94); 641 So.2d 1080, the court held that three consecutive six-year sentences for three counts of forgery were not excessive, given that the defendant was a fourth felony offender, and on probation when he committed the offenses. In *State v. Davis*, 571 So.2d 210 (La.App. 3 Cir.1990), this court held that an

eight-year sentence for forgery was not excessive, as the defendant was a third felony offender.

In light of the jurisprudence, especially *Davis*, we conclude that the present Defendant's sentence does not constitute an abuse of the trial court's sentencing discretion. Therefore, this assignment lacks merit.

*State v. Wilson*, 01-625, pp. 18-19 (La.App. 3 Cir. 12/28/01), 806 So.2d 854, 867, *writ denied*, 02-323 (La. 9/13/02), 827 So.2d 1121.

We note the record does not demonstrate that Defendant is a multiple felony offender, while the defendants discussed in *Wilson* were. However, Defendant entered guilty pleas to three counts in the present matter, and to eight counts under the companion bills. The sheer volume of illegal activity committed by Defendant against her victims was significant. Further, she took advantage of people who trusted her, harming individuals and a business through actions that caused approximately $154,000 in economic harm.

Defendant relies upon three theft cases in her attempt to demonstrate the maximum sentences for identity theft and theft valued over $1,000 are excessive. In *State v. Delaneuville*, 545 So.2d 659 (La.App. 5 Cir.), *writ denied*, 551 So.2d 1335 (La.1989), the appellate court found the defendant's five-year sentence, with three years suspended and five years of active probation, was not excessive. She was a first offender; while working as a bookkeeper, she improperly took $110,000 from her employer and from some client accounts, over a four-year period. Although the present Defendant seems similarly situated to the defendant in *Delaneuville*, we note the judge in *Delaneuville* received letters of support on that defendant's behalf. *Id.* at 661. As the judge in this case observed, the letters he received regarding Defendant were all negative. Also, in *Delaneuville*, the restitution was a condition of probation. In this case, Defendant was given the opportunity to avoid incarceration by making partial restitution; however, she failed to do so. Also, the defendant in

*Delaneuville* was convicted of a single count of theft, while Defendant pled to multiple counts and charges. Defendant also cites *State v. Froiland*, 05-138 (La.App. 5 Cir. 7/26/05), 910 So.2d 956, in which the defendant, an office manager, misappropriated more than $200,000. Citing *Delaneuville*, the appellate court held that the defendant's six-and-a-half-year sentence, all but eighteen months suspended, with five years active probation, was not excessive. *Id.* at 966. The court ordered the defendant to pay restitution. Like in *Delaneuville*, but unlike in this case, the defendant in *Froiland* was convicted of a single count of theft. Also, restitution was part of the sentence, rather than a means of avoiding incarceration altogether.

In the final case cited by Defendant, *State v. Lintzen*, 541 So.2d 197 (La.App. 3 Cir. 1988), this court held that defendant's thirty-two-year sentence, composed of four consecutive eight-year terms, was excessive. The defendant approached four separate victims and convinced each to invest in gold coins which apparently did not exist. His total take from the scheme was more than $120,000. This court stated:

> In imposing sentence in this case, the trial judge meticulously complied with the sentencing guidelines of La.C.Cr.P. art. 894.1. Albeit, we conclude that, although the sentences imposed fall within the statutory limits, the penalties imposed and made to run consecutively (32 years) are grossly disproportionate to the severity of defendant's crimes, shock our sense of justice and constitute a manifest abuse of discretion. Article 1, Sec. 20 of the Louisiana Constitution of 1974 prohibits cruel, excessive or unusual punishment. Although within statutory limits, a sentence may nonetheless be excessive. *State v. Sepulvado*, 367 So.2d 762 (La.1979); *State v. Naquin*, 527 So.2d 601 (La.App.3rd Cir.1988). Although a trial judge is allowed wide discretion in imposing sentence, such discretion is not unbridled. *State v. Bonanno*, 384 So.2d 355 (La.1979); *State v. Beavers*, 382 So.2d 943 (La.1980).
>
> The crimes committed by defendant were nonviolent and posed no threat or danger to public safety. Although defendant had two prior felony convictions for issuing worthless checks, such offenses occurred more than twelve years prior to these convictions. Although we have compassion for the victims who suffered financial harm as a result of defendant's crimes, we do not consider that the harm suffered by them is unlike that suffered by the victims in *State v. Langford*, 467 So.2d 41

(La.App.4th Cir.1985), *writ denied*, 483 So.2d 979 (La.1986) [eight years for a single count of theft: the defendant intentionally overdrew his bank account by more that $848,000]; *State v. Calamia*, 490 So.2d 428 (La.App. 5th Cir.1986)[seven years for one count of theft: office manager improperly took more than $400,000, and facilitated the taking of another $600,000 by other individuals]; or *State v. Chapman*, 490 So.2d 697 (La.App.2d Cir.1986) [three years at hard labor for one count of theft not excessive: bookkeeper took approximately $175,000 from business], where considerably lesser penalties were imposed.

*Id.* at 198.

We note that *Lintzen* pre-dated *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996), wherein the Louisiana Supreme Court reversed this court's holding that a sentence was excessive, and emphasized that the only pertinent question on review is "whether the trial court abused its broad sentencing discretion, and not whether another sentence might be more appropriate." *Id.* at 959, *citing State v. Humphrey*, 445 So.2d 1155, 1165 (La.1984), and *State v. Williams*, 412 So.2d 1327 (La.1982).

This court in *State v. Fontenot*, 01-540, pp. 3-8 (La.App. 3 Cir. 11/7/01), 799 So.2d 1255, 1257-60, thoroughly examined the jurisprudence regarding maximum ten-year sentences for types of theft under La.R.S. 14:67:

At the sentencing hearing in the case at hand, the trial court stated:

> I've looked at this case from, from both sides. She's a young woman, I understand the family. I also understand what the victims have gone through over here. It's hard for this Court to make a decision, it really is, but yet I am going to do it. I'm going to take the bull by the horns this morning and I'm going to impose a sentence that I think is fair and equitable under the circumstances, she's not going to like it. I don't know if the victims are gonna like it neither but this is what I'm going to do. I've considered everything and this is my sentence. Ten years at hard labor, I suspend three of the years. Upon her release from prison or making parole, I place her on active supervised probation for a period of five years . . . .
>
> . . . .

In *State v. LeBlanc*, 578 So.2d 1036 (La.App. 3 Cir.1991), the defendant, who was convicted of one count of felony theft in excess of $500, was sentenced to the maximum term of ten years at hard labor. The defendant alleged his sentence was unduly harsh under the circumstances of the case. A review of the record showed that the defendant had stolen by means of fraud an amount in excess of $500,000 over a three-year period. The record further established that defendant had been convicted several times of felony theft and had been placed on probation, but continued his fraudulent activity even after he was convicted on the instant offense and was awaiting sentencing. In affirming the sentence, the court found the sentencing court was justified in imposing the maximum sentence upon the defendant noting that while the defendant was only twenty-nine years old, he had committed a series of felony thefts, forgeries, and issuing worthless checks. In our case, Defendant had no criminal history and the amount taken was about one tenth the amount taken in LeBlanc.

The defendant in *State v. McKinnie*, 33,175 (La.App. 2 Cir. 3/1/00); 755 So.2d 367, argued that her maximum sentence of ten years on a conviction of felony theft was excessive because none of her past offenses were crimes of violence. She further argued that she was high on crack cocaine at the time of the offense. The court held that defendant's sentence was not excessive[,] noting that she had been arrested seventeen times in eighteen years and had been convicted in ten theft-related cases. Likewise, in *State v. Daigle*, 96-782 (La.App. 5 Cir. 1/28/97); 688 So.2d 158, *writ denied*, 97-597 (La.9/5/97); 700 So.2d 506, the defendant claimed that his sentence of ten years at hard labor for a conviction on one count of felony theft was excessive. The defendant was an accountant, who was employed as a comptroller for a large corporation. Over a ten-year period, he embezzled an estimated $600,000 from the corporation. He had no prior criminal activity and made partial restitution to the victim. He asserted that he was not a "most egregious" offender, deserving of the maximum sentence. Our colleagues on the fifth circuit wrote:

> In imposing sentence, the trial judge noted the great economic loss suffered by the victim company and stated that a lesser sentence would deprecate the seriousness of the offense . . . The trial judge also noted that prior to his trial on the instant offense, defendant jumped bond and fled to Nevada.

> The court noted defendant's criminal record (a 1969 misdemeanor conviction for obscenity and a 1982 misdemeanor conviction for criminal mischief, reduced from a charge of crime against nature) and indicated the decision was also influenced by the fact that the instant offense was actually an ongoing series of criminal acts for which the state could have brought several individual charges.

*Id*. at 159-160. The court found that the imposition of defendant's maximum sentence was supported by the record and that the sentence was not excessive in light of the facts of the case. Again, both of these cases are easily distinguishable from the case at hand.

Finally, we think it is appropriate to mention the case of *State v. Roberts*, 427 So.2d 1300 (La.App. 2 Cir.1983), where the appellate court found two concurrent maximum sentences of ten years for two convictions of felony theft of more than $500 to not be excessive. In that case, the defendant was also convicted of one count of theft of more than $100, for which she received a sentence of two years at hard labor. The defendant had engaged in a series of thefts wherein she stole more than $8,500 from her employer. While the facts of that case are similar to the facts of the case at hand, it is also readily distinguishable. For example, in that case, the trial court made a finding that the defendant was an inappropriate candidate for probation and that any sentence less than the one imposed would deprecate the seriousness of the crimes. Accordingly, we shall not rely on it for guidance in this case.

Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime. "A sentence is considered grossly disproportion [sic] if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock our sense of justice." *State v. LeBlanc*, 578 So.2d 1036, 1038-1039. The factors supporting the sentences in the above cited cases were, with the exception of *Roberts*, much more egregious than were the factors in the instant case. In this case, the trial court referred to the pre-sentence report and stated: "[T]he pre-sentence is certainly unfavorable towards [Defendant]." We disagree. The pre-sentence report revealed that Defendant was thirty-four years old, a single mother of two young children, a high school graduate, with a continuous employment history, and had no prior criminal history. The report did not recommend prison time; rather, it indicated that she would respond in a positive manner to probation supervision. She has attempted to pay a part of the restitution ($2,000.00), albeit on the date of sentencing. The amount of the theft involved, while quite substantial, was significantly less than the amounts involved in Jones, Daigle and LeBlanc. Further, this was not a crime of violence, and Defendant claims that she would be able to pay a substantial part of the restitution (possibly $20,000 to $30,000) in a short period of time.

We also note that the presentence investigation report shows that Dr. Sylvester and his wife were of the opinion that Defendant needed some type of mental help, but that she needed some jail time even if she pays restitution. While the State argues that this theft was not a one time occurrence, but a well planned, premeditated, and continuous event, the trial court did not take any note of this in its sentencing of Defendant. Rather, the trial court seemed to rely on the presentence investigation report in making its decision, and it made no comments regarding Article 894.1 considerations and the factual basis it took into account in

individualizing Defendant's sentence.

We find that the presentence investigation report does not support a maximum sentence in this instance. We agree with Dr. Sylvester that Defendant should be required to serve a jail term even if she makes restitution. We also agree with the state that this crime was a well planned, premeditated, and continuous event that warrants a substantial sentence, but that it does not involve the most serious violation of the offense nor is Defendant the worst type of offender. As such, the maximum sentence is so disproportionate to the crime and punishment as to shock our sense of justice, and it inflicts nothing more than needless pain and suffering.

Therefore, we find, that in light of the presentence investigation report and the lack of findings by the trial court that Defendant was an egregious offender or that the crime was the most serious of its kind, the sentence was excessive. As such, we reverse the ten year maximum sentence and remand to the trial court for resentencing noting that a substantial sentence should include both a prison term and probation in which restitution be made a condition shall be appropriate.

We find the Defendant in the present case is analogous to those cases in which maximum sentences were affirmed. She took advantage of people who trusted her, harming individuals and a business through actions that caused approximately $154,000 in economic harm.

The trial judge in this case carefully enumerated the factors he considered in rendering sentence. He noted the Defendant led a life of "deceit, deception, and dishonesty." The trial judge believed any lesser sentence would deprecate the severity of Defendant's actions. He set forth nine aggravating factors that led to his decision to impose the maximum sentence, and emphasized he saw no mitigating factors whatsoever.

Although Defendant lacks any prior convictions seen in many of the cases where a maximum sentence was imposed, the trial court emphasized the sheer volume of offenses committed and the severe impact they had on the victims. Defendant committed multiple offenses that not only resulted in severe economic hardship, but were deliberately cruel to the victims. June Fadler was grieving the loss of her spouse

and suffering from a potentially fatal disease, and Defendant feigned concern and stole repeatedly from Mrs. Fadler and then committed additional crimes over the ensuing months to cover up her actions. Thus, considering the vast discretion vested in the trial court, we are unable to say the sentences imposed in the present case represent an abuse of that discretion or that the sentences are constitutionally excessive.

## DECREE

For the foregoing reasons, Defendant's sentences are affirmed.

**AFFIRMED.**